UNITED STATES DISTRICT COURT
SOUTHIMN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

NANCY ELIZABETH ZEOLI,
Administratrix of the Estate of
CHARLES ZEOLI, SR., Deceased,

Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

Defendant.
________________________________/

**COMPLAINT FOR DAMAGES**

The Plaintiff, NANCY ELIZABETH ZEOLI, sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES (hereinafter referred to as "Carnival" and alleges:

**THE PARTIES AND JURISDICTION**

1. Federal subject matter jurisdiction arises under and is by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

2. At all times material hereto, the Plaintiff, NANCY ELIZABETH ZEOLI, was the wife of Charles Zeoli, Sr., and is a resident of the State of New York and has been duly appointed as administratrix of the Estate of Charles Zeoli Sr.

3. The Defendant, CARNIVAL CORPORATION, is authorized to do business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida.

4. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

b. Had an office or agency in this state and/or county; and/or

c. Engaged in substantial activity within this state; and/or

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

5. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

6. The incident in this case occurred on or about August 21, 2015.

7. This incident occurred onboard the Carnival *Splendor* cruise ship on Deck 3, near the Black Pearl Restaurant.

8. At all times material hereto, the Plaintiff‘s decedent was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel. The Plaintiff is not in possession of the Passenger Contract Ticket. The Defendant is in possession of the Passenger Contract Ticket or a facsimile thereof.

9. Carnival Corporation, doing business as Carnival Cruise Lines, owns and/or manages more than 20 cruise ships under the name of Carnival Cruise Lines alone. On each and every one of the cruise ships, Carnival has multiple doorways to the exterior decks, with various ramps and thresholds, which thousands of passengers transgress daily, both walking, in wheel chairs or on scooters. Carnival knows these ramps and thresholds on the decks of each of these ships are extremely high traffic areas on which most of the passengers visit daily. Carnival also knows for these reasons it is crucial for passenger safety to keep the ramps, thresholds, and door entrances to said decks, well maintained and in good, clean and dry condition.

10. Carnival Corporation, through its employees on the *Carnival Splendor*, failed to provide a safe ramp and threshold for passengers with disabilities to access the exterior deck of the vessel while underway. The ramp and threshold was established in such a way that it had a very steep incline and extremely dangerous.

11. Further, the ramp and threshold was wet and Carnival knew or should have known that the ramp and threshold was unsafe for passengers with special needs to visit the exterior deck of the vessel. Further, Carnival should have had personnel available to assist passengers with special needs for accessing the exterior deck and re-entering the ship.

12. As a result of the Defendant's negligence, Charles Zeoli, Sr., on the day and time of the accident, attempted to maneuver his electric scooter over the ramp located on the exterior door threshold to re-enter the vessel. As a result of the unsafe incline of the ramp, the lack of any personnel to assist Mr. Zeoli, and the wetness on the ramp, his scooter suddenly slid into the wall inside the doorway tipping over sideways, falling on top of him, causing serious, debilitating, including a severely fractured hip and significant permanent injuries, which ultimately lead to renal failure and ultimately his death. Mr. Zeoli was taken to the ship’s medical facility.

13. Despite obvious signs that Mr. Zeoli had injured and possibly fractured his hip in the fall, no x-rays were taken due to the fact that the x-ray machine on board was not working properly.

14. Despite Carnival medical staff being appraised of the seriousness of Mr. Zeoli condition, the medical staff allowed him to remain in excruciating pain onboard the ship until the ship returned to New York. Mr. Zeoli, Sr. then sought medical care on shore where it was determined that he had a fractured hip which ultimately lead to acute renal failure, due to his lack of medical care onboard by Carnival's medical staff, his overall health dramatically declined and he died on September 4, 2015.

15. Carnival also knows it must inspect the ramps, thresholds and decks of the ship, especially those leading to or near the "smoking deck," on a regular basis in order to prevent hazardous and dangerous conditions and to regularly dry the ramps due to saltwater overspray. Carnival knows that the ramp, threshold and exterior doorway are a means of escape and must comply with the International Convention for the Safety of Life at Sea (SOLAS) regulations.

16. Carnival knows or reasonably should know that the ramp and threshold of the doorway should be in reasonably good condition, dry, and include any slip-resistant strips, or means to permit scooters such as that operated by Mr. Zeoli to freely exit and re-enter the ship without any restrictions or obstacles, especially in the area in such close proximity to the smoking area on the ship.

17. Carnival further knows that the ramps must comply with the American National Standards Institute (ANSI) regulation, requiring slip-resistant surfacing. Carnival further knows that the stairs must comply with SOLAS and ANSI regulations regarding, incline, slope, and rise, as well as detectable warnings.

18. On the date of this incident, the ramp's incline was excessive and the threshold leading to and from the third deck smoking area was in violation of said standards; and, in such a state of disrepair so as to create a hazardous and dangerous condition for its passengers, including the Plaintiff's decedent.

19. At all times material hereto, the ramp and threshold failed to comply with SOLAS regulations, was wet, and failed to conform to ANSI standards, requiring proper incline, slope, rise, widths, and proper slip-resistant material.

**<u>COUNT I: NEGLIGENCE</u>**

20. The Plaintiff, NANCY ELIZABETH ZEOLI, adopts and realleges each and every allegation contained in paragraphs 1-19 as though fully set forth herein.

21. The Defendant owed a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff's decedent herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So. 2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall. 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd*., 475 So. 2d 248 (Fla. 3d DCA 1985). The Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited, S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). *Vierling v. Celebrity Cruises*, 339 F.3d 1309, 1319-20 (11th Cir. 2003)("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the 'slightest negligence' renders a carrier

liable).

22. Carnival has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F.2d 975 (2d Cir. 1936); *Samuelov v. Carnival*, 870 So.2d 853 (Fla. 3DCA 2004); and *Chan v. Society Expeditions*, 123 F.3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation*, 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F 3rd 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation*, 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F.3d 1309, 1319 (11th Cir. 2003).

23. The Defendant Carnival breached its duty to exercise reasonable care under the circumstances, and was negligent by:

a. Failing to keep the ramps maintained and in good condition to allow normal and safe use by passengers using scooters;

b. Failing to inspect for, and to observe on a reasonably frequent basis, changes in conditions of the ramps;

c. Failing to comply with SOLAS regulations requiring proper dimensions, height, slope, on ramps used as a means of escape;

d. Failing to comply with ANSI regulations requiring proper slope, height, dimensions, and warnings, on ramps aboard the ship.

e. Failing to comply with ANSI regulations requiring proper slip-resistant flooring or properly secured non-skid material on ramps;

f. Failing to properly and reasonably monitor and control the activities of people in an area, especially an area where Defendant knows is an area of high traffic and continuous problems;

g. Failing to prevent wetness on the ramps which can lead scooter traffic to slip and slide as Plaintiff's decedent did while transgressing the subject ramp, which caused it to slide out of control and hit the wall and turn over on top of the decedent;

h. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions to exist on the ship's ramps, such as the one in this case;

i. Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries;

j. Providing negligent maintenance to the area or to the premises;

k. Failing to otherwise maintain the area and the premises in a reasonably safe manner;

l. Failing to comply with applicable standards, statutes, and/or regulations regarding the height, slope, width, and dimensions of the ramp upon which Plaintiff's decedent was injured, the violation of which is negligence per se and/ or evidence of negligence;

m. Failing to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence;

n. Failing to comply with Title III (Public Accommodations) of the American Disability Act of 1990 made applicable to foreign cruise ships by virtue of *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, which required reasonable and safe accessibility to all public areas of the ship including the dangerous and hazardous ramp giving rise to Charles Zeoli, Sr.'s injury and ultimate death; and,

o. Failing to warn passengers, including the Plaintiff's decedent, of the dangerous incline of the ramp, that the ramp was wet and were in a state of disrepair and should be avoided or properly barricaded to avoid use.

24. The Defendant created a dangerous condition on the subject ship and allowed the dangerous condition to exist thereby causing an accident on the date referenced above in which

the Plaintiff's decedent was severely injured.

25. The Defendant herein (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

26. The Defendant had constructive knowledge of the dangerous condition by, inter alia, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

27. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations.

28. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

29. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

WHEREFORE, the Plaintiff demands judgment against the Defendant for economic damages, including loss of support, household services, nurture and guidance in the past, medical and funeral expenses, and future economic damages including but not limited to loss of support, income, loss of the ability or potential to earn money in the future, in accordance with Death on the High Seas Act (DOHSA), 46 U.S.C. app. §761 (2006) (current version at 46 U.S.C.A. §30301

(2008)), together with interest under the maritime law or which otherwise accrues from the date of the incident described herein, and any and all other damages which the Court deems just or appropriate and demands trial by jury of all issues so triable.

**COUNT II: NEGLIGENT MEDICAL CARE AND TREATMENT**

30. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1-29 as though fully set forth herein.

31. That the Defendant, CARNIVAL owed a duty to Plaintiff's decedent to provide prompt and appropriate medical care following the severely fractured hip he suffered in the fall on his scooter on the subject ramp.

32. That the names of the doctor and nurse aboard the *Carnival Splendor* who treated the Plaintiff's decedent is unknown, and hereinafter will be referred to as "DOCTOR" and "NURSE" respectively.

33. That at all times material, DOCTOR was employed by the Defendant, CARNIVAL, as its ship's physician and was at all times material acting within the scope and course of employment.

34. That at all times material, NURSE was employed by the Defendant, CARNIVAL, and was at all times material acting within the scope and course of employment.

35. Defendant, CARNIVAL, by and through the acts of its employees or agents, was negligent, in one or more of the following ways:

a. in failing to properly assess decedent's condition;

b. in allowing a nurse to make the initial assessment;

c. in failing to have a doctor assess the patient;

d. in failing to timely diagnose and appropriately treat the patient;

e. in failing to order appropriate diagnostic x-rays or scans to further assess the degree of his injury;

f. in failing to obtain consultations with appropriate specialists;

g. in failing to properly monitor the patient;

h. in deviating from the standard of care for patients in decedent's circumstances, who had suffered a significant injury;

36. That as a direct and proximate result of the negligence of the Defendant, as described above, the decedent's condition was aggravated and he did not receive appropriate medical care for days, resulting in an increase of decedent's injury.

37. That had CHARLES ZEOLI, SR., received the appropriate care and treatment, it is more likely than not that his injury would not have resulted in his death.

38. That as a result of the negligence of the Defendant, as heretofore described, Plaintiff's decedent suffered complications following the injury which resulted in his death.

WHEREFORE, the Plaintiff demands judgment against the Defendant for economic damages, including loss of support, household services, nurture and guidance in the past, medical and funeral expenses, and future economic damages including but not limited to loss of support, income, loss of the ability or potential to earn money in the future, in accordance with Death on the High Seas Act (DOHSA), 46 U.S.C. app. §761 (2006) (current version at 46 U.S.C.A. §30301 (2008)), together with interest under the maritime law or which otherwise accrues from the date of the incident described herein, and any and all other damages which the Court deems just or appropriate and demands trial by jury of all issues so triable.

## COUNT III: APPARENT AGENCY

39. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1-39 as though fully set forth herein.

40. That at all times material, Defendant, CARNIVAL, held out its medical staff, including its doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel. That the Defendant, CARNIVAL, promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel. That CARNIVAL held out its staff, including DOCTOR and NURSE, as being direct employees or its actual agents.

41. That the Defendant, CARNIVAL, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line a part of a marketing tool to induce passengers such as the Plaintiff and her husband, Charles Zeoli, Sr., to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

42. That the Defendant, CARNIVAL, manifested to the Plaintiff's decedent in this case that its medical staff were acting as its employees and/or actual agents in various ways, including but not limited to the following:

a. the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers;"

b. that the "medical centers" are owned and operated by CARNIVAL, which pays stock to the "medical centers" with all supplies, various medicines and equipment;

c. that the passenger is billed directly by CARNIVAL through the passengers "Sail and Sign Card," whereas the "medical staff," including DOCTOR and NURSE, are paid salaries by CARNIVAL to work in the "medical centers."

d. That the medical staff in this case, including DOCTOR and NURSE, were given uniforms to wear which include name tags, and which have the CARNIVAL name and logo. Said uniforms were required by CARNIVAL to be worn by DOCTOR and NURSE.

43. That the DOCTOR is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

44. That both DOCTOR and NURSE were held out to the passengers by CARNIVAL as being members of the ship's crew.

45. That the Defendant, CARNIVAL, put the ship's doctor and nurse under the command of the ship's superior officers, including the Master of the ship.

46. That the cruise line represents to immigration authorities that the doctor and nurse are members of the ship's crew.

47. That both the ship's doctor and nurse are permitted to eat with the ship's crew.

48. That the ship's doctor and nurse provide services in the ship's "medical centers" and the Plaintiff's decedent was required to go to the ship's medical center to be seen for him injuries.

49. That at the time of Charles Zeoli, Sr.'s injury, he was seen and briefly examined by the ship's nurse and/or physician.

50. That based on the foregoing, the Plaintiff's decedent believed and it was reasonable for him believe that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendant, and he was never given any reason to believe otherwise.

51. That the Plaintiff's decedent relied to his detriment on his belief that the doctor and nurse were direct employees or actual agents of the Defendant in that the Plaintiff's decedent followed the advice of the nurse and/or doctor who did not seek any further medical testing or evaluation, until return to New York, shortly after which time he suffered renal failure as a direct result of his hip failure and the complications from lack of early treatment.

52. That the Defendant, CARNIVAL, is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff demands judgment against the Defendant for economic damages, including loss of support, household services, nurture and guidance in the past, medical and funeral expenses, and future economic damages including but not limited to loss of support, income, loss of the ability or potential to earn money in the future, in accordance with Death on the High Seas Act (DOHSA), 46 U.S.C. app. §761 (2006) (current version at 46 U.S.C.A. §30301 (2008)), together with interest under the maritime law or which otherwise accrues from the date of the incident described herein, and any and all other damages which the Court deems just or appropriate and demands trial by jury of all issues so triable.

ROBERT L. GARDANA, P.A.
*Attorney for Plaintiff*
12350 SW 132 Court, Suite 204
Miami, FL 33186
P: 305.358.0000
F: 305.358.1680
By: /s/Robert L. Gardana, Esq.
Florida Bar No. 279668